Matter of R.B. v S.S. (2025 NY Slip Op 50887(U))

[*1]

Matter of R.B. v S.S.

2025 NY Slip Op 50887(U)

Decided on April 24, 2025

Family Court, Westchester County

Fuargo, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 24, 2025
Family Court, Westchester County

In the Matter of a Family Custody Proceeding Under the Family Court Act R.B., Petitioner,

against
S.S., Respondent.

Docket No. [Redacted]

Trevor Eisenman, Esq.
Counsel for the father, R.B.
180 A South Broadway, STE 100
White Plains, NY 10605
Edward G. Lammers, Esq.
Counsel for the mother, S.S.
505 White Plains Road
Tarrytown, NY 10591
Stephen P. Gold, Esq.
Attorney for the children
470 Mamaroneck Avenue, STE 300
White Plains, NY 10605

Maritza Fuargo, J.

The above parties are the parents of M.B. and I.B. (the "children"). A final order of custody on default was entered September 10, 2020 (Cohen, C.A.R) granting the mother sole legal and physical custody of the children (the "custody order"). The custody order was entered [*2]following service of the petition on the father, who repeatedly declined to appear on the matter on the ground that, as a sovereign citizen, the Court had no jurisdiction over him. In granting sole legal and physical custody to the mother on default, the Referee determined that such was in the best interest of the children. Following the entry of the custody order, the mother relocated to North Carolina with the children. On September 8, 2021, April 4, 2022, and again on May 2, 2022, the father filed petitions seeking to modify the prior custody order. During the pendency of these proceedings, the father was granted electronic visitation with the children if initiated by the children. Following allegations of inappropriate behavior by the father during these electronic visits, the calls were subsequently directed to be supervised by a social worker on consent. The temporary orders for electronic visitation specifically stated that the prior custody order was to remain in full force an effect. The Court ordered a forensic evaluation on May 23, 2023. A forensic evaluation was conducted by Westchester Jewish Community Services ("WJSC") and a report was submitted to the Court on January 15, 2025.
To warrant modification of a court order of custody, the party seeking the change must show that there has been a change in circumstances such that the modification is necessary to ensure the continued best interests of the children (see Li Wong v. Fen Liu, 159 AD2d 823 [2d Dept 2018]). The best interests of the children are determined by a totality of the circumstances (Eschbach v. Eschbach, 56 NY 167 [1982]). A party seeking a change of custody is not automatically entitled to a hearing but must make an evidentiary showing of some change of circumstances sufficient to warrant a hearing on the issue (Matter of Gurewich v. Gurewich, 58 AD3d 628, 629 [2d Dept. 2009]; Granata v. Granata, 289 AD2d 527 [2d Dept 2001]). Even where a change of circumstances has been demonstrated, a hearing may be dispensed with or abbreviated where the court possesses sufficient information to undertake a comprehensive independent review of the children's best interests (see Grasso v. Grasso 28 AD3d 482 [2d Dept 2006] (court possessed sufficient information to render an informed determination on custody and visitation without a hearing, consistent with the best interest of the child); see also, Johnson v. Semple, 273 AD2d 311 [2d Dept 2000]; see Matter of Potente v Wasilewski, 51 AD3d 675, [2d Dept 2008]; Li Wong v. Fen Liu, 159 AD2d 823 [2d Dept 2018]). 
In this matter, the petitioner has not pled facts which, if true, would constitute a substantial change in circumstances since the entry of the custody order. In fact, he has not alleged any change in circumstances that would gravitate toward changing custody or modifying access here. While respondent did move out of state with the children, this relocation is not the reason for the mother receiving sole custody. Nor is it the reason that petitioner's visits with the children are markedly circumscribed. The same issues that resulted in the order of custody, the subsequent access orders severely limiting petitioner's access, and his estrangement from the children continue to exist.
Moreover, even if petitioner had pled and proved a change in circumstances, he would further be required to plead and prove facts demonstrating that the best interests of the children required a modification to the existing order. Based upon the proceedings in this case and the record before the Court, petitioner is not able to meet this burden.
The Court was presented with reports regarding petitioner's harmful behavior toward the children. The social worker assigned by the Court to supervise visitation reported that the children, while encouraged to speak with petitioner by their mother, mostly refused to do so due to what the children described as petitioner's "anger issues," and his verbal abuse, name-calling and derogatory statements about their mother. In addition, WJCS submitted a detailed and [*3]extensive forensic evaluation report setting forth sound and well-supported recommendations, based upon interviews, assessments and evaluations of both parties and the children, ultimately opining that visitation between petitioner and the children is not appropriate at this time. The report, noted that petitioner acknowledged prior inappropriate treatment of the children, including locking one of the children in a closet as punishment and giving the children his middle finger during a zoom call. In addition, petitioner told the WJCS evaluator that there are times when his thinking becomes clouded and anger takes over, admitted examples of which include a road rage incident with police involvement and a "regrettable incident" with his daughter when she was eight years old. Nevertheless, although petitioner was advised and previously agreed to seek anger management treatment, he declined to do so even though doing so may have resulted in a resumption of his relationship with his children. Of particular concern are the evaluator's observations that petitioner "does not impress as child-centered, but rather self-centered, and that he has a tendency to project blame on the mother for his loss of contact with his children, minimizing his own role in their unwillingness to call him." The WJCS report notes that petitioner's interest in seeing his children is due to his own "feeling of loss and absence in his life," not because he sees any beneficial impact he would have on his children. The evaluator opines that petitioner is suffering from a treatable mental illness but to date has not obtained treatment. Based on the forgoing, the evaluator recommended there be no access between petitioner and the children "in the absence of an operative treatment plan, and active therapeutic regimen." Even if treatment is initiated, only a stepwise reintroduction is recommended, i.e., starting with positive notes and cards. The evaluator further recommended petitioner would likely benefit from a parenting class. With regard to petitioner's interest in obtaining custody, it is significant that petitioner repeatedly expressed that he is opposed to any verbal contact with the mother, effectively preventing any possibility of meaningful cooperative parenting.
Many efforts were made by the Court and counsel to reach a resolution of the matter wherein petitioner would agree to engage in recommended treatments (i.e., anger management, parenting classes, and individual therapy with possible psychopharmacological intervention) as a condition to access with the children being resumed. Petitioner declined any resolution insisting he wanted to go for full custody.
Over the course of five years, these proceedings have taken a serious toll on the children who have expressed their feelings to the forensic evaluator and the attorney for the children. They are entitled to finality. For the foregoing reasons, it is not necessary for this Court to hold an evidentiary hearing on the petitions.
In accordance with statute, the Court has searched the statewide registry of orders of protection, the sex offender registry and the Family Court's warrant and child protective records. This search revealed no results for either party.
ACCORDINGLY, IT IS HEREBY
ORDERED that it is in the best interest of the subject children that the respondent shall continue to have sole legal and physical custody of the children; and it is further
ORDERED that petitioner shall have direct access to medical and educational records and providers concerning the children; and it is further
ORDERED, that respondent shall notify petitioner at least seven (7) days before petitioner makes any major decisions concerning the health, education and welfare of the children; and it is further
ORDERED, that respondent shall notify petitioner of any major medical issues concerning the children; and it further
ORDERED, that petitioner shall have one virtual communication with the children on the third Wednesday of every month at 5:00 pm, subject to children's wishes and desires. Should there be a conflict with the children's extracurricular activities and the regularly scheduled electronic communication, petitioner shall be entitled to a make-up virtual communication subject to children's wishes and desires, as can be arranged by and between the parties via text message; and it is further
ORDERED, that this Court shall maintain jurisdiction over this matter for a period of six (6) months from the date of this Order; and it is further
ORDERED, that proof of petitioner's meaningful engagement in individual psychotherapy within the six (6) month period following the entry of this Order shall constitute a change in circumstance for petitioner to seek to modification in this Court; and it is further
ORDERED, that the parties shall keep each other apprised of any change in cellular telephone numbers.
Dated: April 24, 2025
Yonkers, New York
E N T E R
Hon. Maritza Fugaro
Family Court Judge